USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/12/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARON SAYEG,

                Plaintiff,

- against -

AHRON AZULY, et al.,

                Defendants.

**REPORT AND RECOMMENDATION**

**14-CV-4096 (LTS) (RLE)**

**TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Plaintiff Sharon Sayeg ("Sayeg") commenced this trademark infringement action against Defendant Ahron Azuly ("Azuly") and Defendant Lior Milstein ("Milstein") on June 6, 2014. (Doc. No. 1.) On July 10, 2014, the case was referred to the undersigned for general pretrial by the Honorable Laura Taylor Swain. On March 31, 2015, the Court held a telephone conference, and Sayeg informed the Court that he intended to move for default judgment against Azuly. On April 29, 2015, Judge Swain referred the case for a Report and Recommendation on a motion for default judgment. (Doc. No. 37.)

On September 25, 2015, the Court ordered Azuly to show cause why judgment should not be entered against him for failure to defend this action. (Doc. No. 41.) Azuly has not made any subsequent appearances, and has not responded to the Court's order. The Court issued a Report and Recommendation on October 20, 2015. (Doc. No. 42.) On January 7, 2016, Judge Swain found Azuly in default and precluded him from presenting a defense to Sayeg's claims on the issue of liability. (Doc. No. 45.) Judge Swain also gave Sayeg and Milstein leave to move for judgment by default against Azuly, and directed them to submit evidence sufficient to meet their burdens of proof if a trial had been held. (*Id.*) On March 15, 2016, Sayeg submitted a

declaration and exhibits in support of his motion for a default judgment. No submission was made by Milstein.

For the reasons that follow, I recommend that Sayeg's motion for default judgment be **DENIED**.

## II. BACKGROUND

### A. Factual History

Where a court determines that a defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, must be taken as true. *Li Ping Fu v. Pop Art Int'l Inc.*, No. 10-CV08562 (DLC) (AJP), 2011 WL 4552436, at *1 (S.D.N.Y. Sept 19, 2011).

Sayeg owned and operated an Israeli falafel and kebab restaurant. (Amended Complaint ("Compl.") ¶ 10.) He leased the premises from Azuly from December 2000 to April 27, 2007. (*Id.* ¶ 4.) Sayeg invented the name of the restaurant, "Hoomoos Asli," and paid for the design and logo, which were used on the building front, menus, fliers, and in advertisements. (*Id.* ¶ 11.) The restaurant was popular with local residents and celebrities, and the trademark Hoomoos Asli gained recognition. (*Id.* ¶ 12-13.) The trade name gained notoriety through Sayeg's use, advertising, and promotion, and came to "possess a strong secondary meaning, and represent an extremely valuable goodwill." (*Id.* ¶ 15.)

In or around 2006, Sayeg defaulted on the rent in the amount of $9,000 per month for three months. (*Id.* ¶ 16.) Azuly commenced an eviction proceeding against Sayeg and the restaurant in New York County housing court. (*Id.*) According to Sayeg, this proceeding indicated that Azuly "recognized, and manifested knowledge that the business name 'Hoomoos Asli' belongs to Plaintiff." (*Id.* ¶ 18.)

Around February 7, 2007, Azuly "induced" Sayeg to reach a settlement for the payment of arrears. (*Id.* ¶ 19.) Sayeg agreed to pay $73,410 in exchange for a renewed lease. (*Id.* ¶ 20.) This amount consisted of: (1) $46,000 for unpaid rent from September 2006 to January 2007; (2) $8,410 for a tax increase; (3) $10,000 for additional security if a new lease was made; (4) $5,000 for kitchen equipment to be supplied with the renewed lease; and (5) $4,000 in attorneys' fees for issuance of the new lease. (*Id.* at 4-5.)

Sayeg paid $66,590 of the total amount, leaving a balance owed of $8,410. (*Id.* ¶ 21.) Azuly "deceived the Housing Court" and submitted an affidavit to obtain a judgment for the balance, and two additional months of use and occupancy at $9,200 for each month. (*Id.* ¶ 22.) The Parties stipulated to an entry of judgment for actual rent, use, and occupancy without requiring Sayeg to pay the balance owed plus the two additional months. (*Id.* ¶ 23.) On March 19, 2007, however, the housing court entered a judgment against Sayeg in the amount of $28,310, without "examining the components" of the stipulation. (*Id.* ¶ 24.)

In April 2007, Sayeg found a tenant to replace him, and agreed to leave all inventory and equipment to satisfy his debt. (*Id.* ¶ 25.) This arrangement also called for the replacement tenant to pay approximately $40,000, which would reduce the amount Sayeg owed in arrears to zero. (*Id.*) Sayeg gave the replacement tenant an oral license to use the Hoomoos Asli trademark, design and reputation. (*Id.* ¶ 26.) In June 2007, Sayeg moved to compel Azuly to extend his lease. (*Id.* ¶ 27.) The motion was unsuccessful because of the "passage of time and bad representation." (*Id.*) Azuly stated in court that he was appointing his son-in-law, Milstein, to negotiate the surrender of the premises with Sayeg. (*Id.*)

Milstein and Azuly met on June 28, 2007, at which point Milstein attempted to obtain from Sayeg the inventory and rights to the Hoomoos Asli name. Milstein stated that Sayeg owed

3

a $10,000 debt, which Sayeg did not remember. (*Id.* ¶ 28.) Sayeg told Milstein that he never received his "initial one month deposit" from Azuly, which was around "that figure." (*Id.* ¶ 28-29.) Sayeg submitted a copy of an agreement signed by him and Milstein, dated June 28, 2007. It states:

> This agreement is made between Sharon Sayehg, and Ahron Azuly. Sharon Sayehg fully complys [*sic*] and agrees to the following conditions and hereby agrees to execute this document as being a binding agreement between both parties.

(Comp., Exhibit ("Ex.") 2.) The agreement contemplated that Sayeg owed Azuly $33,000, of which Azuly agreed to credit $23,000 for the inventory, restaurant equipment, and "continued use of business name, 'Hoomoos Asli.'" (*Id.*) Sayeg was to pay the remaining $10,000 balance owed to Azuly in $1,000 monthly increments, beginning January 1, 2008. (*Id.*) If "one payment was late, missed, [or] overdue," such a breach would nullify and void the agreement, and the original amount of $33,000 would be due to Azuly.

Sayeg stated that he did not pay the $1,000 payments and left the United States. (Comp. ¶ 30.) He explained that the payments "did not represent a valid debt owed to Azuly." He also stated that the "$23,000 figure was an arbitrary one" and did not reflect the value of the inventory or the trade name. (*Id.* ¶ 30.) Because Sayeg did not make the required payments, he claimed that the agreement was null and void. He also claimed that it was never signed by Azuly. (*Id.* ¶ 31-32.) He learned later that Milstein was never authorized by Azuly to negotiate the surrender of lease, and the purchase of the inventory and trademark. (*Id.* ¶ 32.) Milstein continued to use the trademark, design, and reputation of Hoomoos Asli without Sayeg's permission. (*Id.* ¶ 33.)

B.   **Procedural History**

The procedural history is largely incorporated from the Report and Recommendation issued October 20, 2015. (Doc. No. 42.) On July 15, 2014, Azuly requested appointment of pro bono counsel, which the Court denied without prejudice on the basis that he failed to provide sufficient information for the Court to make a determination as to his indigence or the merits of any defense. (Doc. Nos. 5 and 26.) Azuly never formally entered an appearance in the case.[1]

In a letter dated September 22, 2014, Sayeg represented to the Court that Azuly had defaulted. He also asked to amend the Complaint to add additional causes of action and "clarify the chain of events." (Doc. No. 25.) On October 6, 2014, the Court granted Sayeg leave to amend. On January 5, 2015, Sayeg filed a letter entitled "Certificate of Default against Def. Aaron Azuly," which was dated November 14, 2014. (Doc. No. 34.) On January 20, 2015, Azuly emailed the Court asking for the date of the next telephone conference, which was scheduled for January 29, 2015. (Doc. No. 42 at 3.) At his request, the Court adjourned the conference to March 31. The Court held a telephone conference with Sayeg and Milstein on that date, but Azuly was not present. (*Id.*) Sayeg and Milstein stated that they attempted to reach Azuly, but had only reached his voicemail. The Court also attempted to reach Azuly at the scheduled conference time, but was unsuccessful.

On April 28, 2015, Judge Swain referred the case to the undersigned for a Report and Recommendation on a motion for default judgment. (Doc. No. 37.) On June 16, 2015, the Court ordered Sayeg and Milstein to produce affidavits describing their attempts to contact Azuly, including contact information used. (Doc. No. 38.) Milstein filed an affidavit on July 13, 2015,

---

[1] The Report and Recommendation states that Azuly answered the Complaint on August, 19, 2014, and the Amended Complaint on November 12, 2014. Milstein, who was named in the original Complaint as Lior Azuly, answered on those dates. Ahron Azuly never answered or otherwise moved. (Doc. No. 42 at 2.)

5

and Sayeg filed a declaration on July 20, 2015. (Doc. Nos. 39 and 40.) On September 25, 2015, the Court issued an order for Azuly to show cause why: (1) he had failed to answer Sayeg's inquiries; (2) he did not appear for the phone conference held on March 31, 2015; and (3) judgment should not be entered against him for his failure to defend the action. (Doc. No. 41.) Azuly never answered or otherwise contacted the Court or the Parties. The Report and Recommendation was issued on October 20, 2015.

On December 29, 2015, Milstein filed a letter dated December 16, 2015, asking for a certificate of default against Azuly on all his cross-claims. (Doc. No. 44.) On January 7, 2016, Judge Swain entered a default against Azuly, and ordered Sayeg and Milstein to file any motions for default judgment no later than April 30, 2015. (Doc. No. 45.) Sayeg filed a declaration on March 15, 2016. (Doc. No. 46.)

### III. DISCUSSION

#### A. Legal Standard

Following the entry of default by the court, a party may seek a judgment of default pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. *See Robertson v. Doe,* No. 05-CV-7046 (LAP), 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). In order to do so, an application must be presented to the court for the entry of judgment, and notice of the application must be sent to any defaulting party who has appeared to allow the party to show cause to the court why a default should not be entered. FED. R. CIV. P. 55(b)(2).

Whether default judgment is entered is left to the sound discretion of the district court. *Mason Tenders Dist. Council Welfare Fund v. Bold Const. Co., Inc.,* No. 01-CV-0641 (LTS) (THK), 2002 WL 1788024, at *2 (S.D.N.Y. Aug. 1, 2002). In determining whether to enter a judgment of default, courts consider three factors: "(1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of

6

prejudice that the non-defaulting party would suffer as a result of the denial of motion for default judgment." *Id.*

Sayeg has satisfied the procedural requirements to warrant default judgment. He has made a formal application for entry of judgment. (Doc. No. 46.) Because Azuly never appeared, it was not necessary that Sayeg send notice. Sayeg nevertheless filed a declaration with the Court describing his attempts to contact Azuly by mail and by telephone from September 2014 to March 31, 2015. (Doc. No. 42 at 3.) The Court also ordered Azuly to show cause why a default should not be entered.

Although Milstein asked that default judgment be entered in his favor as well, he has not satisfied the requirements established by Judge Swain to present an application to the Court. In a letter dated December 16, 2015, Milstein asked for a certificate of default against Azuly. Judge Swain declared Azuly in default, and authorized Milstein to move for judgment by default against Azuly. The motion was to be accompanied by evidence to meet his burden of proof had a trial been held. Milstein did not properly file an application for judgment by default with the Court.

By not appearing, the Court considers Azuly's default willful. Rule 12(a)(1) requires a defendant to serve an answer within twenty-one days after being served with the summons or complaint. FED. R. CIV. P. 12(a)(1)(A)(i). Azuly was served on June 6, 2014. (Doc. No. 2.) Over two years have passed since Azuly was first served, but he has not filed an answer, or otherwise formally appeared in this action by filing any responsive pleadings. Azuly communicated with the Court on two occasions: he requested counsel and emailed Chambers to inquire about an upcoming conference. Azuly clearly knew about this litigation, and willfully disregarded it by not taking any action to defend it. He was ordered to show cause for his failure

to appear, and to respond to Sayeg's inquiries. He did not respond to that order, and did not attempt any further communication with the Court or the Parties. Azuly did not file opposition papers or otherwise respond to Sayeg's declaration for default judgment. Azuly therefore willfully defaulted. *See Robertson v. Doe*, No. 05-CV-7046 (LAP), 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008) (citing *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)) ("[F]inding that defendants' failure to respond to the complaint, failure to file opposition papers to Plaintiff's motion for default judgment and failure to appear for a scheduled pre-trial conference were evidence of willful default").

Azuly has also not presented a meritorious defense. He has failed to present any evidence, or even submit a conclusory denial. *See Brown v. Gabbidon*, No. 06-CV-814 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("it is well-established in this Circuit and this state that 'a defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense'") (citing *Enrol Oil Corp v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)) (collecting cases). The Court cannot analyze whether any defense presented would constitute a defense for trial because Azuly has not given the Court an indication of what he would argue. *See Gonzalez v. City of New York*, 104 F. Supp. 2d 193, 197 (S.D.N.Y. 2000) ("[A] defendant need not establish his defense conclusively ... but he must present evidence of facts that 'if proven at trial, would constitute a complete defense'") (citing *Enron Oil Corp.*, 10 F.3d at 98); *see also Davis v. Musler,* 713 F.2d 907, 916 (2d Cir. 1983).

Lastly, Sayeg would have to engage in costly discovery to meet his burden of proof if the case were to proceed to trial. Furthermore, the "adversary process has been halted because of an [] unresponsive party." *Dae Woo Kim v. New York*, No. 90-CV-1487 (KMW), 1990 U.S. Dist.

8

LEXIS 7137, at *5 (S.D.N.Y. June 11, 1990) (internal citations omitted). To deny the motion would deny Sayeg recourse to secure relief in this Court. *See Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. 2008).

Given that Sayeg has met all three factors, the Court must next determine whether the Amended Complaint states a claim for relief, except for those allegations relating to damages. *See Yahoo! Inc. v. XYZ Companies*, 782 F. Supp. 2d 300, 303 (S.D.N.Y. 2011) (finding that a grant of default judgment is a two-step process involving first, the filing of an entry of default, and second, a determination of whether the complaint states a claim for relief); *see also Estate of Ellington ex rel. Ellington v. Harbrew Imports, Ltd.*, 812 F. Supp. 2d 186, 192 (E.D.N.Y. 2011) ("A defendant's default is an admission of well-pleaded allegations in the complaint except those relating to damages") (citing *Finkel v. Romanowicz*, 577 F.3d 79, 93 n. 6 (2d Cir. 2009)).

A default establishes the defendant's liability as long as the complaint states a valid cause of action. *Coach, Inc. v. O'Brien*, No. 10-CV-6071 (JPO) (JLC), 2011 WL 6122265, at *5 (S.D.N.Y. Nov. 28, 2011) (internal citations omitted). "A plaintiff is entitled to all reasonable inferences of the evidence offered to the Court." *Estate of Ellington*, 812 F. Supp. 2d at 192 (citing *Au Bon Pain Corp. v. Artec, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must allege facts sufficient to allow the court "to draw reasonable inference[s] that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. A plaintiff is not entitled to a default judgment as a matter of right just because the defendant is in default. *Bravado Int'l Grp. Merch. Servs., v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009).

**B.     Liability for Trademark Infringement**

A prima facie case for trademark infringement requires that a plaintiff show: (1) it has a valid mark entitled to protection under the Lanham Act; and that (2) the defendant used the mark (a) in commerce, (b) in connection with the sale ... or advertising of goods and services, and (b) without plaintiff's consent. *Yahoo! Inc.*, 872 F. Supp. 2d at 304 (citing *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005)). "Plaintiff must also show that defendants' use of the mark 'is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." *Id.* (quoting 15 U.S.C. § 1125(a)(1)(A)).

Sayeg alleges trademark infringement based on the unauthorized use by Azuly of the mark "Hoomoos Asli." (Comp. ¶ 37.) He argues that Azuly's actions were willful, intentional, purposeful, and done with indifference to his rights. (*Id.* ¶ 41.) He also argues that Azuly's actions were done in bad faith. (*Id.* ¶ 45.) As a result of Azuly's infringement, Sayeg claims that he suffered damage and injury to his "business, reputation, and goodwill," and that he sustained loss of profits. (*Id.* ¶ 46.)

**1.     Validity of the Trademark**

Even reading Sayeg's papers liberally under the *pro se* standard, *see Bravado Int'l Grp.*, 655 F. Supp. at 187, the validity of his mark for protection under the Lanham Act is questionable. Other than his conclusory statement that he created and paid for the design and logo of the mark, there is nothing to indicate that the mark has been registered. He has not provided a certificate of registration, or a registration number showing that he is the owner of the mark. *See, e.g., Yahoo!*, 872 F. Supp. 2d at 304 ("Plaintiff has described its registration of its name ... and has provided copies of those valid registrations"). He did submit, however, a

10

document from the United States Patent and Trademark Office website listing Milstein as the owner of the Hoomoos Asli mark. According to this document, the mark was registered on June 14, 2014. (Comp. at Ex. 3.)

The Court construes Sayeg's argument as claiming that Milstein never had a valid claim to the mark to register it. If the mark was never registered by Sayeg, it may still be entitled to protection under the Lanham Act. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210-11 (2000) ("The text of [15 U.S.C. § 1125(a)] provides little guidance as to the circumstances under which unregistered trade dress may be protected"). Courts have seemingly required a plaintiff to show that its mark is distinctive. Because distinctiveness is an "explicit prerequisite" for registration under the Lanham Act, "the general principles qualifying a mark for registration ... are for the most part applicable in determining whether an unregistered mark is entitled to protection." *Id* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).

A mark is distinctive and capable of protection if it is either: "(1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos*, 505 U.S. at 769. Marks that are considered "arbitrary" or "fanciful" are inherently distinctive and entitled to protection because "their intrinsic nature serves to identify a particular source of a product." *Id* (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (CA2 1976)). A mark acquires distinctiveness if it has developed a secondary meaning "in the minds of the public" and "the primary significance of [the mark] is to identify the source of the product rather than the product itself." *Wal-Mart Stores*, 529 U.S. at 210-11 (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851 n.11 (1982)).

Sayeg alleges that he invented the name "Hoosmoos Ali," paid for the design and logo, and advertised the restaurant under that name. (Comp. ¶ 7.) He claims that the mark became popular with local residents, tourists, and celebrities, and gained notoriety. (*Id.* ¶ 8-9.) Taking these allegations as true, Sayeg's mark has acquired distinctiveness such that "in the minds of the public" the mark would be associated with the source of the product, namely Sayeg's restaurant. He has therefore established that his mark is entitled to protection.

### 2. Sayeg has not established that Azuly Used the Mark without Consent

Assuming that Sayeg has sufficiently proved that his mark is entitled to protection, however, his Complaint is not well-pled to state a cause of relief under the Lanham Act. He claims that Azuly used the mark and reputation of the restaurant without his permission. Azuly evicted Sayeg from the restaurant for failure to pay rent. Although the Parties entered into a settlement for the payment of arrears and a renewed lease, Sayeg only paid a portion of the total amount owed, leaving a balance of $8,410. (Comp. ¶ 21.) Azuly then sought a judgment from housing court for the balance and additional months of Sayeg's occupancy. The judgment was entered in March 2007 in the amount of $28,310. (Comp. ¶ 22-23.)

Because Sayeg owed Azuly for back rent and continued occupancy, the Parties entered into an agreement. It stated that Sayeg owed Azuly $33,000. Azuly received "continued use" of the Hoomoos Asli trademark in consideration for Azuly's forgiveness of $23,000 of the money owed by Sayeg. That left $10,000 to be paid in $1,000 monthly increments by Sayeg. (Comp. Ex. 2.) Sayeg argues that he only conditionally gave Milstein permission to use the trade name. Comp. ¶ 29.) The Court notes that the agreement does not contain any language to suggest that Azuly's use of the trademark was conditional. The agreement indicates the opposite by proclaiming the document as a binding agreement between Sayeg and Azuly.

Sayeg argues that the agreement is invalid because: 1) he did not make his monthly payments; 2) $23,000 does not reflect the real value of the inventory and trade name; and 3) the agreement was never signed by Azuly, but was instead signed by Milstein who did not have authority to negotiate on Azuly's behalf. (*Id.* ¶ 30-32.) As an initial matter, Sayeg may not unilaterally breach the agreement by failing to uphold his end of the bargain, and then benefit by arguing that it is nullified. *See Barbagallo v. Marcum, LLP*, 925 F. Supp. 2d 275, 287 (E.D.N.Y. 2013) ("It is a 'fundamental principle of contract law that ... the material breach of a contract by one party discharges the contractual obligations of the *non-breaching* party'") (emphasis added) (citing *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 291 (S.D.N.Y. 2005)); *see also Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 618 (S.D.N.Y. 2004) ("As a general principle of contract law, a material breach excuses the other party's nonperformance") (citing *Bernard v. Las Americas Communications*, 84 F.3d 103, 108 (2d Cir. 1996)) (collecting cases).

General principles of contract law allow parties to make their own bargain, "even if the consideration exchanged is grossly unequal or of dubious value." *U.S. Engine Production, Inc. v. AGCS Marine Ins. Co.*, 769 F. Supp. 2d 626, 628 (S.D.N.Y. 2011) (citing *Apfel v. Purdential-Bache Sec. Inc.*, 81 N.Y.2d 470, 475 (N.Y. 1993)). The adequacy of the consideration is therefore not for the court to review. *Id* (citing *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 495 (S.D.N.Y. 2004)). A court's primary task in interpreting a contract is to determine the intentions of the parties "as objectively manifested by the language of the contract in light of the background against which the contract was written." *RLS Associates, LLC v. United Bank of Kuwait PLC*, 380 F.3d 704, 710 (2d Cir. 2004) (internal citations omitted).

Whether $23,000 is adequate consideration for the use of the trade name is not for the Court to determine. It appears that the intention of the Parties was to give Azuly the use of the trademark "Hoomoos Asli" in exchange for partial forgiveness of Sayeg's debt. It follows that Azuly acquired the use of the mark with Sayeg's consent. Even assuming that Milstein did not have authority to sign the agreement on Azuly's behalf, the agreement still shows that at some point, Sayeg intended to sign over use of the mark to Azuly in partial payment of his debt. The Court is not bound to accept the legal conclusion that Milstein was never authorized to negotiate the agreement and bind Azuly when there have been no facts elicited to support that assertion. Sayeg concedes that Azuly appointed Milstein in housing court to negotiate the surrender of the premises. (Comp. ¶ 27.) He also submitted an affidavit signed by his mother, who was a guarantor for the restaurant, in which she states that a stipulation was reached to credit all arrears in exchange for the tradename. (Doc. No. 46-2 at 12.) In any event, Sayeg argues that it was Milstein who continued to use the trademark without his permission after the agreement was void.[2]

The Court finds that Sayeg fails to establish liability for trademark infringement because he has not pled facts sufficient to show that Azuly used the mark without his consent. I therefore recommend that Sayeg's motion for default judgment be **DENIED**.

**C.     The Court Does Not Exercise Supplemental Jurisdiction over the State Law Claims**

This court exercises federal question jurisdiction over the trademark claims in this case because they are alleged under the Lanham Act. *See Foxrun Workshop, Ltd. v. Klone Mfg., Inc.,*

---

[2] Sayeg submitted as evidence a "Restaurant Purchas and Business Lease Agreement," dated December 1, 2007, that shows that Azuly believed he was the rightful owner of the tradename, and that he signed over use of the name to Milstein when he leased the premises to him. (Doc. No. 46-2 at 1.)

686 F. Supp. 86, 89 (S.D.N.Y. 1988) (citing *Koufakis v. Carvel,* 425 F.2d 892 (2d Cir. 1970)); *see also Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 377 (S.D.N.Y. 2000).

Where a case is properly before a federal district court on the basis of federal question jurisdiction, the court has supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). A district court may, however, "decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "The Second Circuit has observed … that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Milano v. N.Y. City Taxi & Limousine Comm'n*, No. 03-CV-3896 (DAB), 2007 U.S. Dist. LEXIS 25238, at *7 (S.D.N.Y. March 26, 2007) (citing *Valencia ex. rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("This Court has concluded in some cases that the district court did not abuse its discretion in exercising supplemental (or pendant) jurisdiction over state-law claims after the plaintiff's federal claims had been dismissed").

If this Report and Recommendation is adopted, it will dispose of all federal claims against Sayeg before the Parties have engaged in discovery. I therefore recommend that the Court decline to exercise supplemental jurisdiction over any state law claims construed from Sayeg's Complaint against Azuly.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that Sayeg's motion for default judgment be **DENIED**.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, 500 Pearl Street, Room 1320, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: August 12, 2016**
**New York, New York**

Respectfully Submitted,

*/s/ Ronald L. Ellis*

The Honorable Ronald L. Ellis
United States Magistrate Judge

**MAILED BY CHAMBERS**

16